UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

LEIDY SANCHEZ BALLESTROS,                                    Petitioner,

v.                                              Civil Action No. 3:25-cv-594-RGJ

KRISTI NOEM, ET AL.                                          Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Leidy Sanchez Ballestros' Writ of Habeas Corpus, [DE 1], and Motion for a Temporary Restraining Order, [DE 3]. Respondents responded to both on September 21, 2025. [DE 8]. Petitioner replied on September 23, 2025. [DE 11]. The Court held a Show Cause Hearing on September 24, 2025. [DE 5]. After the hearing, the Court ordered further briefing. [DE 18]. The parties complied. [DE 24, DE 26]. Both matters are ripe for adjudication. For the reasons below, the Court will **GRANT** the Petition for a Writ of Habeas Corpus and Petitioner's Motion for a Temporary Restraining Order is Denied as **MOOT**.

## I.      Background

Petitioner Leidy Sanchez Ballestros ("Sanchez") is a 37 year old native and citizen of Colombia. [DE 1 at 1]. In Columbia, she was in a "physically and emotionally abusive relationship" with her ex-partner. [*Id.* at 6]. She then fled Colombia "fearing for her life" and turned herself into United States immigration authorities in April 2024. [*Id.*]. Sanchez has had multiple health scares in the United States, including headaches, vomiting, and a potential brain mass. [DE 23-1 at 365].

Upon entering the United States in April 2024, federal immigration authorities paroled Sanchez into the United States, releasing her on her own recognizance and initiated standard

removal proceedings, pursuant to 8 U.S.C. § 1229a[1] ("Section 1229") and 8 U.S.C. § 1226 ("Section 1226"). [DE 1 at 9]. On January 14, 2025, Sanchez submitted an application for asylum before a Chicago Immigration Court. [*Id.* at 6]. On June 9, 2025, Sanchez appeared for a hearing before the Immigration Court. [*Id.*]. There, the United States moved to dismiss her standard removal proceedings and have Sanchez placed in expedited removal, 8 U.S.C. § 1225 ("Section 1225"). [*Id.*]. The Immigration Judge then reset the hearing, pending further briefing. [*Id.*]. As Sanchez was leaving the court, the United States detained her and transferred her to the Grayson County Detention Center in Kentucky. [*Id.* at 6-7]. According to the United States, the detention is pursuant to their authority under Section 1225, not Section 1226. [DE 24 at 371].

Then, after briefing by both parties on the United States' motion to dismiss, on July 16, 2025, the Immigration Judge ruled in favor of the United States and dismissed the standard removal proceedings. [DE 1 at 7]. Sanchez then appealed the Immigration Judge's decision to the Board of Immigration appeals, where the appeal remains pending. [*Id.*]. Still, as alleged by Immigration and Customs Enforcement ("ICE"), Sanchez remains detained at Grayson County pursuant to Section 1225. [DE 24 at 371].

Sanchez asserts that the United States' actions violated the Administrative Procedures Act, the Due Process Clause of the Fifth Amendment, and the Immigration and Nationality Act. [DE 1 at 16-21]. Sanchez seeks release from her detention, or in the alternative, for the Court to order a prompt bond hearing to determine whether she should remain in custody. [*Id.* at 21].

---

[1] Although the Court recognizes this Section is derived from the Immigration and Nationality Act ("INA") § 240, the Court will use U.S.C. citations throughout for uniformity and asks the Parties to do the same.

## II.    Exhaustion of Remedies

The United States asserts that the Court should deny the petition and the motion for temporary restraining order because Sanchez has failed to litigate "to completion a motion for bond before an immigration judge." [DE 24 at 377].

When neither a statute nor rule mandates exhaustion, it is within the Court's "sound judicial discretion" whether to require exhaustion. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). This is also known as "prudential exhaustion." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019). For the proposition that exhaustion should apply, the United States primarily relies on *Torrealba v. U.S. Dep't of Homeland Sec.*, 2025 WL 2444114 (S.D. Ohio Aug. 25, 2025). However, *Torrealba* is distinguishable from the present matter. The central legal issue in *Torrealba* was the challenging of an expedited removal order. *Torrealba* 2025 WL 2444114, at *2. That is separate and distinct from this matter, as Sanchez is challenging her statutory reasoning for detention, and how the detention allegedly violates the Due Process Clause.

No statute or rule cited by either party mandates exhaustion. Because of that, as mentioned, it is within the Court's "sound judicial discretion" whether to require exhaustion. *Shearson* 725 F.3d at 593. The Sixth Circuit has not adopted any formal test, but instead, many trial courts within the Sixth Circuit borrow the Ninth Circuit test from *United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). In the alternative, a court can also choose to waive exhaustion, when the "legal question is fit for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025).

The United States is mistaken that exhaustion is required for two main reasons. First, the Court finds that all factors favor weigh *against* requiring exhaustion. The central question at issue here is which detention provision applies to Sanchez. This is a purely legal question of statutory interpretation. Alternatively, this Court is not bound, or deferential to any agency interpretation of a statute. *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) ("courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."). Second, the Sixth Circuit has held due process challenges generally do not require exhaustion because the BIA cannot review constitutional challenges. *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). Here, because of the alleged Constitutional violation, an appeal to an administrative review board, the BIA, is not necessary. And lastly, the United States has made clear their position on Section 1225 as it applies to Sanchez. Therefore, it is unlikely that any administrative review would lead to the United States changing its position and precluding judicial review. *Id.* As a result, prequential exhaustion is not required.

Second, the United States contends that because Sanchez has not already filed a motion for bond before an Immigration Judge, she must exhaust her administrative remedies there first. However, the United States fails to see the futility in this exhaustion. As Petitioner notes, the Board of Immigration Appeals recently held that an "Immigration Judges lack authority to hear bond requests or to grant bond to[noncitizens] who are present in the United States without admission." *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Therefore, without an order from this Court, if Sanchez were to move for a bond hearing, the Immigration Judge would be bound by *Matter of Yajure Hurtado* with no room for discretion. *Mosqueda v. Noem*, 2025 WL 2591530, at *7 (C.D. Cal. Sep. 8, 2025) (administrative exhaustion is satisfied for habeas petitioners challenging the Government's novel interpretation of Section 1225 because *Hurtado* makes any

4

appeal to immigration courts "futile"). As this Court has noted, and Respondents have acknowledged, this Court disagrees with, and held separately, from the decision in *Matter of Yajure Hurtado*. *See Beltran Barrera v. Tindall*, 2025 WL 2690565 (W.D. Ky. Sep. 19, 2025). Thus, it would be futile for Sanchez to attend a bond hearing where she knows her bond will be denied.

In these situations, courts can, and have, waived exhaustion. *Lopez-Campos*, 2025 WL 2496379, at *5 ("Because exhaustion would be futile and unable to provide Lopez-Campos with the relief he requests in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition."); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425 (E.D. Mich. Sep. 9, 2025) ("the Court requires administrative exhaustion, Pizarro Reyes faces not only more, potentially unnecessary, months in prison, but also harm to his ability to mount a successful case against his removal. As a result, the Court will waive administrative exhaustion."); *Simpiao v. Hyde*, 2025 WL 2607924, at *6-7 (holding that because "the policy concerns animating the common-law exhaustion" are absent, "waiver of exhaustion is warranted").

And as the Court in *Lopez-Campos* noted, bond appeals before the BIA on average take six months to complete. *Lopez-Campos*, 2025 WL 2496379, at *5 (citing to *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025)). Coupled with the fact that exhaustion would be futile, are Sanchez's health issues that require resolution of this matter in a timely manner. *Id.* Prolonging Sanchez's detainment would mean unnecessary hardship when the Court is able to resolve the purely legal question now. *Id.*

Therefore, this Court will follow other federal trial courts to waive the exhaustion requirement for Sanchez and reach the merits of her Petition.

### III.    Discussion

#### A.  Section 1225 vs. Section 1226

The United States' argument regarding the applicability of Section 1225 versus Section 1226 is nearly identical to its argument in *Patel v. Tindall*, 2025 WL 2823607, at *2-4 (W.D. Ky. Oct. 3, 2025) and therefore the Court fully incorporates by reference its reasoning and decision in that action. There, this Court held that "an individual who has been paroled without first having been placed in expedited removal *cannot later be designated for expedited removal.*" *Id.* at 6 (emphasis in original). Applying that rule to the present matter, Sanchez, who has been paroled upon entry into the United States, cannot later be designated for expedited removal.

Additionally, as discussed in *Patel*, noncitizens cannot be in two parallel paths of removal proceedings. *Id.* at 6-7. The United States has conceded this fact in other cases. *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *7 (N.D. Cal. Sep. 12, 2025) (stating that "The Government concedes that Ms. Salcedo Aceros is currently in full removal proceedings under Section 1229, and that while those proceedings are live, she cannot be simultaneously subjected to Section 1225(b)(1)'s expedited removal proceedings."); *Munoz Materano*, v. *Arteta*, 2025 WL 2630826, at *11 (S.D.N.Y. Sep. 12, 2025) ("Respondents therefore expressly concede that, while Munoz Materano's appeal is pending, he remains in Section 240 removal proceedings subject to § 1229a, not expedited removal pursuant to § 1225(b)(1).").

And still, as stated above, even *after* the appeal process ends, Sanchez cannot be subject to Section 1225 proceedings. In fact, ICE violated the INA by invoking it against Sanchez. *See Munoz Materano*, 2025 WL 2630826, at *11.

Therefore, Sanchez is subject to standard removal and detention proceedings under Section 1229a and Section 1226. The Court must then examine if the process Sanchez was afforded is consistent with the Due Process Clause.

### B. Lawfulness of Current Detention

As of today, Sanchez remains in ICE custody. The Court must determine whether the continued detention is in violation of her Due Process. The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335.

#### i.    Private interest

It is undisputed Sanchez has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The fact that Sanchez has not petitioned for a bond hearing does not diminish this private interest. Because, as discussed, the IJ is bound by BIA case law, which would hold that Sanchez is subject to Section 1225 proceedings and pursuing that route would be futile. *Mosqueda*, 2025 WL 2591530, at *7. Therefore, Sanchez could not receive the proper remedy without this Court's involvement. In *Espinoza v. Kaiser*, which contains similar facts to the present, the trial court found that a bond hearing, where the IJ "declined to exercise jurisdiction" because the IJ found the individual subject to mandatory detention of Section 1225, not sufficient process. 2025 WL 2675785, at *11 (E.D. Cal. Sep. 18, 2025) (holding

that the bond hearings did not address due process because Petitioner was not afforded the chance for an explanation of their position). There, the Court found the proper remedy to be a proper bond hearing for an IJ to determine the issue of detention on the merits. *Id.* at 12. Additionally, when ICE has initial discretion to detain or release a noncitizen pending removal proceedings, after the initial release, "the petitioner has a protected liberty interest in remaining out of custody." *Hernandez Nieves v. Kaiser*, 2025 WL 2533110, at *4 (N.D. Cal. Sep. 3, 2025). And that due process then "requires a hearing before an immigration judge before re-detention." *Id.* Therefore, the Court finds that the first *Matthews* factor favors Sanchez.

ii. <em>Risk of Erroneous Deprivation</em>

The second factor concerns the risk of the erroneous deprivation of Sanchez's liberty interest. Without a pre-detention hearing that Sanchez is entitled, there is a significant risk of the erroneous deprivation of the liberty interest of remaining out of custody. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that "re-detention without any individualized assessment" establishes a "high risk of erroneous deprivation" of a protected liberty interest). As of today, Sanchez has not had an on merits bond hearing, with counsel and evidence. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that Due process requires at a minimum the opportunity for the petitioner to submit evidence and be heard). Nor have Respondents demonstrated that Petitioner is a flight risk or a danger to the community. In fact, Respondents concede that a proper remedy in this dispute *is* for a bond hearing. ("the Court should find that [a bond hearing] is the optimal first step towards resolving this matter.") [DE 24 at 377]. Thus, because of a high, if not already evident, risk of erroneous deprivation of Sanchez's liberty interest, the second *Matthews* factor favors Sanchez.

###### iii.    United States' Interest

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao v. Hyde*, 2025 WL 2607924, at *12 (D. Mass. Sep. 9, 2025). But Petitioner has no criminal history and has attended her immigration hearings when required after being released on her recognizance. [DE 1 at 3]. It is not the role of the United States to "usurp" the role of an Immigration Judge. *Sampiao,* 2025 WL 2607924, at *10. Therefore, the Court finds that the United States' interest without a proper bond hearing is low. *Ramirez Clavijo v. Kaiser*, 2025 WL 2419263, at *6 (N.D. Cal. Aug. 21, 2025). Thus, this factor also favors Sanchez.

Therefore, the Court finds that all three *Matthews* factors are in favor of Sanchez. The current detention of Sanchez without a proper bond hearing is in violation of both the INA and the Due Process Clause.

As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Patel,* 2025 WL 2823607, at *6; *Beltran Barrera*, 2025 WL 2690565, at *7; *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in original). The Court will not depart from this norm. As a result, Petitioner must be released. Pursuant to Section 1229a & Section 1226, Petitioner is entitled a bond hearing on the merits before a neutral Immigration Judge. *Espinoza*, 2025 WL 2675785, at *11; *Ramirez Clavijo*, 2025 WL 2419263, at *6; *Munoz Materano*, 2025 WL 2630826, at *20.

## IV.    Conclusion

For the reasons stated above, the United States has violated both the INA and Sanchez's due process rights. The Court **GRANTS** Sanchez's Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** her immediate release for a neutral bond hearing before an Immigration Judge. Petitioner's motion for a temporary restraining order [DE 3] is **MOOT.** The United States is directed to release Petitioner Sanchez from custody; and further, to certify compliance with the Court's order by a filing on the docket no later than **October 10, 2025.**

Rebecca Grady Jennings, District Judge
United States District Court

October 9, 2025